UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN RODRIGUEZ MEDINA,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. EDCV 14-2627-JPR<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING COMMISSIONER** |

**I.　PROCEEDINGS**

　　　Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed October 20, 2015, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

1

## II. BACKGROUND

Plaintiff was born in 1963. (Administrative Record ("AR") 130.) He completed the 11th grade (AR 149) and worked as a construction laborer (AR 39-41).

On November 7, 2011, Plaintiff submitted an application for DIB, alleging that he had been unable to work since September 30, 2011, because of chronic pain in his lower back and leg, numbness in his legs, herniated discs in his back, and type II diabetes. (AR 69, 130, 148.) After his application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge. (AR 20, 87-88.) A hearing was held on March 26, 2013, at which Plaintiff, who was not represented, testified, as did a vocational expert. (AR 31-57.) In a written decision issued May 10, 2013, the ALJ found Plaintiff not disabled. (AR 20-27.) On November 12, 2014, the Appeals Council denied Plaintiff's request for review. (AR 1-4.) This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance.

Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

## IV. THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of

impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, he is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

sequential analysis.  § 404.1520(a)(4)(v); <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2011, the alleged onset date.  (AR 22.)  At step two, he concluded that Plaintiff had the severe impairments of diabetes and disc disease of the lumbar spine.  (<u>Id.</u>)  He found that Plaintiff's high blood pressure was nonsevere and that he had no medically determinable mental impairment (AR at 22-23), findings Plaintiff does not challenge.  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing.  (AR 23.)  At step four, he found that Plaintiff had the RFC to perform light work with frequent postural activities.[2]  (<u>Id.</u>)  Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a construction laborer.  (AR 25.)  At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy.  (AR 26.)  Accordingly, he found him not disabled.  (AR 26-27.)

**V.   DISCUSSION**

Plaintiff claims the ALJ erred in assessing his credibility.  (J. Stip. at 3.)  For the reasons discussed below, remand is not warranted.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  <u>Id.</u>

5

### A. Applicable Law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear

and convincing" reasons for rejecting the claimant's testimony.[3] Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (as amended); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

B.  Relevant Background

At the hearing, Plaintiff testified that he could probably lift a gallon of milk but not something that weighed 20 pounds.[4]

---

[3] The Commissioner objects to the clear-and-convincing standard but acknowledges that it is "part of this circuit's law." (J. Stip. at 9 & n.1); see Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (rejecting Commissioner's argument disputing "clear and convincing" standard of review); see also Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (reaffirming Burrell).

[4] A gallon of milk weighs about eight and a half pounds. See Fuller v. Astrue, No. CIV. 09-6223-JE, 2011 WL 2559808, at *3 (D. Or. June 1, 2011) (noting that gallon of milk weighs between 8 and 8.6 pounds depending on fat content), accepted by 2011 WL 2559804 (D. Or. June 29, 2011).

(AR 48-49.) He couldn't sit for more than 45 minutes and could stand for about an hour. (AR 49.) Plaintiff did not perform any household chores but believed he could do laundry if he could choose when to sit or lie down. (AR 51-52.) His wife did all the chores, shopping, and cooking, and his adult son "help[ed] [Plaintiff] with washing [his] car, and help[ed] [him] around the house." (AR 51.)

### C. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely credible." (AR 24.) The ALJ therefore found that Plaintiff could perform light work (AR 23), which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls," § 404.1567(b). As discussed below, the ALJ provided clear and convincing reasons for discounting Plaintiff's allegations.

First, the ALJ found that Plaintiff's "treatment was minimal and conservative in nature." (AR 25.) Indeed, as the ALJ noted, Plaintiff's diabetes and back condition were treated "[w]ithin the relevant period at issue" with only medication and "periodic office care." (Id.) Plaintiff's workers'-compensation doctor treated Plaintiff's back condition with ibuprofen and Vicodin as

needed.[5]  (See, e.g., AR 44 (Plaintiff's testimony that he took Vicodin and ibuprofen for back pain and saw "Dr. Chun" for treatment through worker's compensation), 271-73 (Feb. 2013, orthopaedic surgeon Keola Chun noting that Plaintiff complained of leg and low-back pain and could not tolerate Ultram;[6] he prescribed Motrin three times daily and Vicodin three times daily "PRN," or as needed).)[7]  And as the ALJ noted (AR 25), Plaintiff testified that those medications were effective in "control[ling] the pain" although they didn't totally relieve it (AR 45).  The ALJ also correctly found that although Plaintiff had had periods of uncontrolled diabetes symptoms, those "exacerbations occurred during periods when [Plaintiff] was off of his medications." (AR 25; see also AR 406-08 (Mar. 9, 2012 emergency-room note stating that Plaintiff had history of diabetes; was experiencing increased thirst, urination, and blurred vision; and had been "off meds x 2-3 wks" and needed refill), 471 (Mar. 19, 2012

---

[5] Prescription ibuprofen is a nonsteroidal anti-inflammatory drug used to relieve mild to moderate pain and the tenderness, swelling, and stiffness caused by osteoarthritis.  Ibuprofen, MedlinePlus, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682159.html (last updated Sept. 15, 2015).  Vicodin is a combination of acetaminophen and hydrocodone, a narcotic analgesic.  Hydrocodone Combination Products, MedlinePlus, https://www.nlm.nih.gov/medlineplus/druginfo/meds/ a601006.html (last updated Oct. 15, 2014).  It is used to relieve moderate to severe pain.  Id.

[6] Ultram, or tramadol, is a narcotic analgesic used to relieve moderate to moderately severe pain.  Tramadol, MedlinePlus, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (last updated Oct. 15, 2015).

[7] "PRN," or pro re nata, is a medical term meaning "for an occasion that has arisen," or in other words, "as needed."  Pro Re Nata, Meriam-Webster, http://www.merriam-webster.com.

treatment note stating that diabetes was "uncontrolled"), 416-18 (March 2013 emergency-room note stating that Plaintiff was dizzy with blood-sugar level of "400+," had been out of medication for two months, and was requesting refill).)  When Plaintiff took his diabetes medication, by contrast, he was noted to be "doing well."  (See AR 390 (May 2012 treatment note stating that Plaintiff has "type 2 diabetes" and had been "noncompliant with his medicine for a prolonged period" but was taking medication and "doing well")); cf. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for" Social Security benefits).

   Plaintiff contests the ALJ's finding of conservative treatment, noting that he received "multiple epidural injections to his lumbar spine" (J. Stip. at 6) and that "surgery has been discussed" (id. at 7).  But all of Plaintiff's epidural steroid injections took place while he was still employed as a construction laborer and well before his alleged onset date, in September 2011.  (See AR 433 (July 2001 treating physician's progress report stating that Plaintiff "has had epidurals x 3 in the past"), 334-35 (Oct. 2008 note from lumbar epidural steroid injection), 296-97 (Mar. 2009 req. for authorization for second lumbar epidural steroid injection), 291-92 (Aug. 2009 req. for authorization for third lumbar epidural steroid injection); see also AR 39 (Plaintiff testifying that he last worked on Oct. 30, 2011).)  The ALJ therefore correctly found that "[w]ithin the relevant period at issue" — specifically, the period after his

alleged onset date — Plaintiff was treated only with medication and office visits. (AR 25.)

And although Plaintiff testified that his doctor had "mention[ed] surgery" and informed Plaintiff that he would have "a 50/50 chance" of walking afterward (AR 49), none of the medical evidence shows that surgery was discussed as an option either before or during the relevant period. To the contrary, one of Plaintiff's workers'-compensation doctors noted that after Plaintiff's injury, he had been treated "conservatively." (See AR 315-18.) Thus, the ALJ permissibly discounted Plaintiff's complaints of significant limitations because they were inconsistent with his conservative treatment history. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (that claimant "did not seek an aggressive treatment plan" undermined allegations of disabling impairment); id. at 1039 (ALJ may discount claimant's testimony in light of "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). Although some courts have found treatment with Vicodin not to be conservative, see, e.g., Lasane v. Colvin, No. CV 12-6353-CW, 2013 WL 3121315, at *4 (C.D. Cal. June 19, 2013); Hernandez v. Colvin, No. ED CV 12-655-SP, 2013 WL 655261, at *5 (C.D. Cal. Feb. 22, 2013) (collecting cases), the Court declines to follow them, particularly when nothing in the record indicates that Plaintiff had any side effects from the drug, see Stephenson v. Colvin, No. CV 13-8303-AGR, 2014 WL 4162380, at *9

(C.D. Cal. Aug. 20, 2014) (ALJ properly discounted credibility based on plaintiff's conservative treatment, which included Vicodin); Morris v. Colvin, No. CV 13-6236-OP, 2014 WL 2547599, at *4 (C.D. Cal. June 3, 2014) (ALJ properly discounted credibility when plaintiff received conservative treatment consisting of physical therapy, use of TENS unit, chiropractic treatment, Vicodin, and Tylenol with Vicodin); compare Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment with narcotic pain medication, occipital nerve blocks, triggerpoint injections, and cervical-fusion surgery not conservative).  And even if treatment with Vicodin was somehow not conservative, Plaintiff testified that it helped alleviate his pain and thus he was not disabled in any event.  Cf. Bartlett v. Colvin, No. 1:14-CV-00142-SB, 2015 WL 2412457, at *12 (D. Or. May 21, 2015) (ALJ properly discounted plaintiff's credibility when she "undertook only conservative treatment to treat her arthritis-related pain (Vicodin), which proved to be effective"); Walter v. Astrue, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment when Plaintiff "reported that Vicodin worked for his low back and right knee pain, and asked for refills").

    Second, the ALJ found that Plaintiff's allegations were "not supported by the generally mild findings in the record."  (AR 25.)  Indeed, although Plaintiff claimed to be completely disabled because of his back condition and diabetes, the objective medical evidence fails to support such extreme limitations.  The record shows that Plaintiff suffered a back

injury at work in July 2000 (AR 262, 318), and a February 2001 MRI revealed significant disc herniations at L3-L4, L4-L5, and L5-S1 (AR 266, 318). In October 2001, Dr. Gregory T. Heinen, who treated Plaintiff in connection with his workers'-compensation claim, noted that Plaintiff had returned to work with modified duties, opined that his condition was permanent and stationary, and found that he should be "precluded from heavy work," which meant "loss of 50% of [his] preinjury capacity to lift, bend[] and push/pull."[8] (AR 314, 317.) Plaintiff was eventually awarded lifetime medical insurance for his back condition (AR 262), and he continued to work until October 2011 (AR 24, 39).

Examination findings after Plaintiff's alleged onset date, in September 2011, were relatively mild. For example, in October 2011, Dr. Steven A. Salzman found that Plaintiff had good range of motion of the back, no paraspinous spasm, no tenderness on palpation of the lumbosacral spine or over the sciatic notch, negative straight-leg raise, and normal reflexes. (AR 202.) In November 2011, Dr. Salzman found that Plaintiff had decreased range of motion in his back but no paraspinous spasm, no tenderness on palpation of the lumbosacral spine or over the sciatic notch, negative straight-leg test, and normal reflexes. (AR 373.) A December 2011 lumbar-spine x-ray revealed moderate multilevel degenerative disc disease. (AR 218.) That same

---

[8] Plaintiff testified that as a construction laborer he had to set and pull pipes and other materials weighing 90 or 100 pounds. (AR 41-42; see also AR 300 (Plaintiff's Sept. 2008 "New Patient Questionnaire" stating heaviest weight lifted in construction job was 100 pounds), 285 (Plaintiff's Aug. 2010 "New Patient Questionnaire" stating heaviest weight lifted in construction job was 90 pounds).)

13

1  month, Dr. Bok Choi found that Plaintiff's lumbar back had normal
2  range of motion and no tenderness, swelling, or spasm; his
3  neurological functioning and lower extremities were normal.  (AR
4  188.)  In February 2013, Dr. Chun found that Plaintiff had
5  restricted lumbar range of motion and tenderness to palpation at
6  the lumbosacral junction but a normal gait and intact
7  neurological functioning; he opined that Plaintiff "remains at a
8  permanent and stationary status."  (AR 272.)  And as previously
9  noted, Plaintiff's diabetes appeared to be well controlled when
10 he was compliant with his medication.  (AR 390; see also AR 25
11 (ALJ finding that "[t]he record as a whole conveys that, when the
12 claimant uses his medication as prescribed, his diabetes is
13 typically under good control").)  Although Plaintiff reported
14 having hypoglycemia about twice a week, it resolved "with the
15 ingestion of a carbohydrate."  (AR 201.)
16      It is true, as Plaintiff notes, that an ALJ may not
17 disregard a claimant's subjective symptom testimony solely
18 because it is not substantiated affirmatively by objective
19 medical evidence.  (See J. Stip. at 6 (citing Bunnell, 947 F.2d
20 at 346–47)); Robbins, 466 F.3d at 883.  The ALJ may, however, use
21 consistency with the medical evidence in the record as one factor
22 in the evaluation.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th
23 Cir. 2005) ("Although lack of medical evidence cannot form the
24 sole basis for discounting pain testimony, it is a factor that
25 the ALJ can consider in his credibility analysis."); Carmickle v.
26 Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008)
27 ("Contradiction with the medical record is a sufficient basis for
28 rejecting the claimant's subjective testimony."); Lingenfelter,

14

504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence"). Here, in assessing Plaintiff's credibility, the ALJ properly noted inconsistencies between the relatively mild examination findings and Plaintiff's allegations that he was so disabled as to be unable to, for example, lift anything heavier than a gallon of milk, sit for more than 45 minutes, or stand for more than an hour.[9]

In sum, the ALJ provided clear and convincing reasons for finding Plaintiff not credible. Because those findings were supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959. Plaintiff is not entitled to remand.

---

[9] Plaintiff argues that the ALJ did not specify which of his statements he found not credible. (J. Stip. at 6); see Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (as amended) (reversing when ALJ "found generally that the claimant's testimony was not credible, but failed to identify which testimony she found not credible and why"). That is not correct. The ALJ noted that Plaintiff claimed that he did "basically nothing" around the house, was unable to work because of his medical conditions, and was limited to picking up only a gallon of milk, sitting for 45 minutes, and standing for about an hour. (AR 24.) The ALJ found that those asserted symptoms were not "entirely credible" (id.) for the two reasons discussed above (AR 25). The ALJ also noted that in light of the mild medical evidence, Plaintiff's "generally inactive lifestyle" was attributable to his "own preference" rather than his medical conditions. (Id.) As such, the ALJ did not err. See Bunnell, 947 F.2d at 345-46 (ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain'" (citation omitted)); Altorfer v. Colvin, No. 3:14-CV-01933-HZ, 2015 WL 9255544, at *3 n.1 (D. Or. Dec. 18, 2015) (distinguishing Brown-Hunter because ALJ specified which subject matter of Plaintiff's statements he found not credible).

**VI. CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 17, 2016  _____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[10] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."